UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:18-CR-00184-GNS

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.

KENNETH J. MOORE; and
LINDSEY LEIGH DAVIS                                                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motions to Suppress (DN 24, 25). For the reasons provided below, the motions are **GRANTED**.

## I.      BACKGROUND

The parties do not appear to dispute the facts relating to the present motions. On April 26, 2018, Officer Matthew Johnson ("Officer Johnson") of the Shepherdsville Police Department applied for a warrant to search a home on Hillview Boulevard in Louisville, Kentucky, believed to be the residence of Defendant Kenneth Moore ("Moore"). (Def.'s Mot. Suppress 1, DN 24 [hereinafter Moore's Mot. Suppress]; Pl.'s Resp. Defs.' Mots. Suppress 1, DN 26 [hereinafter Pl.'s Resp.]). Moore had previously been stopped by police and arrested for outstanding bench warrants while waiting in the parking lot for his girlfriend, Co-Defendant Lindsey Davis ("Davis"), to return from a doctor's appointment. (Moore's Mot. Suppress 1-2). In the affidavit supporting his application for the search warrant, Officer Johnson alleged that he believed methamphetamine trafficking was occurring at Moore's residence. (Def.'s Mot. Suppress Ex. 1, at 1-2, DN 24-1 [hereinafter Aff.]).

Officer Johnson's affidavit described the Hillview Boulevard residence and indicated he expected to discover methamphetamine and associated paraphernalia inside. (Aff. 1-2). Officer Johnson disclosed that he had been an officer with the Shepherdsville Police Department for two years. (Aff. 3). The affidavit also contained four pages of standard recitations regarding drug crimes. (Aff. 3-7). Officer Johnson "checked a public records data base and determined that [Moore] listed his address as 1553 Hillview Blvd" in Louisville, further noted that he had arrested Moore at that address on March 22, 2017, and that Moore had received mail at the address in April 2018. (Aff. 3).

In addition to Moore's address, Officer Johnson disclosed information he believed specifically supported probable cause for a warrant to search Moore's residence for evidence of drug trafficking. First, he provided that a named informant told him on April 26 that he had bought one ounce of methamphetamine from Moore a week earlier on April 19, 2018. (Aff. 3). Officer Johnson also indicated that he had previously arrested this named informant with several grams of methamphetamine in August 2017. (Aff. 3). Officer Johnson further averred that he spoke with Agent Lori Tomes with the Drug Enforcement Agency ("DEA"), who told him that "an informant with the Greater Hardin County Drug Task Force ha[d] bought meth from [Moore] in the last three weeks." (Aff. 3).

Presumably, the search warrant issued in response to Officer Johnson's application yielded evidence of drug trafficking. On November 6, 2018, Moore and Davis were charged with possessing with the intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). (Indictment 1, DN 1). Moore was also charged with possessing a firearm in furtherance of the drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).

(Indictment 2). On March 22, 2019, both Moore and Davis moved to suppress the evidence collected pursuant to that warrant.[1]

In his motion, Moore argues Officer Johnson's affidavit contained no evidence he distributed narcotics from the Hillview Boulevard residence, that he used the address to store narcotics, or that any suspicious activity had taken place there. (Moore's Mot. Suppress 2). Moore further contends that the affidavit lacked any indicia of reliability for the information provided by the informants and that there was never any surveillance conducted on his home or any recorded phone conversations linking drug trafficking to the residence. (Moore's Mot. Suppress 2). With these facts, Moore argues the search warrant was unreasonable and invalid under the Fourth Amendment because the affidavit failed to establish the requisite nexus between the place to be searched and any evidence of drug dealing. (Moore's Mot. Dismiss 4). Additionally, Moore contends the affidavit fails to support probable cause because it lacked information establishing the reliability of the informants. (Moore's Mot. Dismiss 5).

In its response, the United States argues that even though the affidavit did not state the drug transactions took place at the residence, Moore is a known drug dealer and courts have acknowledged that evidence of drug dealing is likely to be found where drug dealers live. (Pl.'s Resp. 3). Additionally, the United States contends the exclusionary rule does not bar the admission of the evidence obtained from the search because Officer Johnson conducted the search in good faith in reliance on the warrant. (Pl.'s Resp. 4).

---

[1] In Davis' motion, she incorporates by reference the arguments made by Moore in his motion. (Def.'s Mot. Suppress 1, DN 25). For purposes of this opinion, the Court will refer to Moore's motion with the understanding that the Court's analysis and conclusions apply to Davis as well.

## II. DISCUSSION

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The 'chief evil' deterred by the Fourth Amendment is the physical invasion of the home. Indeed, the right of a citizen to retreat into the home and 'there be free from unreasonable governmental intrusion' stands at the core of the Fourth Amendment." *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (internal citation omitted) (citation omitted).

The Supreme Court has established a "totality of the circumstances" test for determining whether probable cause has been established within the four corners of an affidavit for a search warrant. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (internal quotation marks omitted) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)).

### A. Nexus Requirement

Once presented with an application for a search warrant, the issuing magistrate is tasked with "mak[ing] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238 (1983). "There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (citation omitted). That connection must be specific and concrete, not "vague" or "generalized." *Id.* at 595. If the affidavit fails "to set forth sufficient facts that

4

incriminating evidence would be found *there*, rather than in some other place[,]" then the magistrate lacks probable cause to issue the search warrant. *Id*. (emphasis in original).

Regarding this nexus in the context of defendants categorized as "known drug dealers," the Sixth Circuit has acknowledged that "evidence is likely to be found where the dealers live . . . ." *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (citation omitted). Therefore, in some cases, judges are permitted to conclude there is a fair probability of finding evidence in a residence even though the affidavit does not provide that such evidence had been directly observed at the residence. *See id*. The Sixth Circuit has "never held, however, that a suspect's 'status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home.'" *Brown*, 828 F.3d at 383 (quoting *Frazier*, 423 F.3d at 533). Instead, cases from the Sixth Circuit provide that "if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." *Id*.

"The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). "[A]ffidavit[s] should be reviewed in a commonsense—rather than a hypertechnical—manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citation omitted). The issuing judge's determination is afforded "great deference" and is to be reversed only if the issuing magistrate arbitrarily exercised discretion. *Id*. at 927. "The review of the sufficiency of the evidence

supporting probable cause is limited to the information presented in the four corners of the affidavit." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (citation omitted). "[I]t is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Feldman*, 606 F.2d 673, 679 n.1 (6th Cir. 1979).

The affidavit supporting the search warrant here under review contained no information linking drug trafficking to Moore's residence. *Brown*, 828 F.3d at 382. ("In the present case, the search warrant affidavit contained no evidence that [the defendant] distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there."). The affidavit provides that a named informant told Officer Johnson he purchased drugs from Moore a week prior to the search, but there is no indication that the informant purchased those drugs from Moore at his residence. The affidavit also relates that a second, unnamed informant told DEA Agent Tomes—who in turn told Officer Johnson—that he had purchased drugs from Moore three weeks prior to the date of the search. Again, the second informant failed to state any connection between the drugs and Moore's residence, according to the affidavit.

To support its argument that judges may infer a fair probability of finding evidence inside a drug dealer's residence even if the affidavit fails to state drugs had been personally observed, the United States cites several cases from the Sixth Circuit. (Pl.'s Resp. 3). In *Jones*, the Sixth Circuit affirmed the district court's conclusion that the warrant was based on probable cause where the affidavit stated a confidential informant made at least six drug purchases from the defendant which were recorded by law enforcement. *Jones*, 159 F.3d at 974. Second, "on two occasions when the confidential informant was on the premises of [the defendant's] residence while being monitored by audio surveillance, law enforcement officials heard a drug transaction . . . ." *Id*. Third, the

confidential informant was on the premises within the 72 hours preceding the affidavit and observed the defendant in possession of a quantity cocaine intended to be distributed. *Id*.

In the present case there were no facts concerning repeated drug transactions, no additional surveillance or monitoring by law enforcement, and the informants' transactions with Moore occurred a week and three weeks earlier—much more remote the 72-hour time frame in *Jones*. *See id*. Even more problematic for the United States' argument is that, in *Jones*, there was at least *some* connection between the drug transactions and the defendant's residence because two buys took place on the premises of the defendant's residence, though not in his residence itself. *See id*. By contrast here, there is no information in the search warrant relating any drug activity to the location where Moore lived.

The United States also cites *Berry* to argue the affidavit presented probable cause for the issuance of the warrant. (Pl.'s Resp. 3). In *Berry*, the Sixth Circuit noted that "[a]lthough a defendant's status as a drug dealer, standing alone does not give rise to a fair probability that drugs will be found in defendant's home, . . . there is support for the proposition that status as a drug dealer *plus* observation of drug activity near defendant's home is sufficient to establish probable cause to search the home." *Berry*, 565 F.3d at 339 (emphasis added) (citations omitted). The affidavit in *Berry* provided the defendant "was known to be involved in drug trafficking based on a prior conviction[,]" that he "was arrested for violating his probation for that drug conviction and that officers discovered crack cocaine in [his] car during a search conducted incident to [his] arrest in the driveway of [his residence]." *Id*. Finally, the affidavit provided that, in the officer's experience, "vehicles parked on the premise of the places where controlled substances are found or sold oftentimes contain controlled substances." *Id*. (internal quotation marks omitted).

7

Officer Moore's affidavit does not disclose any observations of drug activity near Moore's residence. The affidavit indicates that Officer Johnson was familiar with Moore's address due to a prior arrest in March 2017, but does not disclose why Moore was arrested then or how that arrest might suggest evidence of drug trafficking would be found in the Moore's residence at the time of the requested warrant. This is not at all like the prior drug convictions and probation violations in *Berry*. Finally, Moore and his vehicle would presumably have been searched incident to his arrest for the outstanding bench warrants, but the affidavit lacks any evidence from that search to indicate the presence of drugs, which could have arguably suggested that Moore was dealing drugs from his residence. In *Berry*, a critical piece of evidence was that a search incident to the defendant's arrest for violating probation—which was conducted while he was in his car in the driveway of his residence, no less—revealed crack cocaine. Without some evidence tying drug trafficking to Moore's residence, *Berry* is unsupportive to the United States' argument.

The United States finally cites to *United States v. Davidson*, 936 F.2d 856 (6th Cir. 1991). (Pl.'s Resp. 3). In *Davidson*, the Sixth Circuit concluded the search warrant affidavit provided a substantial basis that a search of the defendant's apartment would uncover evidence of wrongdoing, even though it did "not state that officers observed drugs or evidence going into or out of his residence." *Davidson*, 936 F.2d at 859. In that instance, however, there was a "'pattern of activity' consistent with drug trafficking[]" based on surveillance reports of frequent meetings between the defendant and individuals known to have been convicted of drug offenses and others the DEA suspected to be drug traffickers. *Id*. The affidavit in *Davidson* also provided that the defendant was observed driving a vehicle connected by DEA files to a suspected drug trafficker and that he had been observed suspiciously using public phones consistent with drug traffickers' use. *Id*.

The affidavit presently before this Court offers no such supplemental information. The affidavit does not describe a pattern of activity consistent with drug trafficking, nor does it indicate any surveillance had been conducted on Moore. Additionally, the affidavit does not refer to any preexisting records linking Moore or his vehicle to drug activity.

All Officer Johnson had to support the warrant to search Moore's residence were Moore's address and information provided by two informants—one named and one unnamed—that they had purchased methamphetamine from Moore a week and three weeks earlier, respectively. (Aff. 3). What the affidavit lacked is any connecting thread between the two. *See Brown*, 828 F.3d at 383 ("[I]f the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer.").

While courts deem credible those informants who provide their name and address and admit to committing crimes, "the fact that the informant was known to the affiant and issuing magistrate and admitted a crime does not alone prove probable cause." *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009); *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). This foils the United States' argument that probable cause existed to search Moore's residence based solely on the named informant's tip. The unnamed informant is viewed as even less reliable. *See Gates*, 462 U.S. at 284 ("By definition nothing is known about an anonymous informant's identity, honesty or reliability."). Regardless of reliability, the affidavit lacked any information suggesting a nexus between Moore's residence and drug trafficking, and the evidence obtained from the search was available because of a warrant which violated the Fourth Amendment's protections against unreasonable searches. *See Brown*, 828 F.3d at 383.

B. **Good-Faith Reliance Exception**

When an officer violates a suspect's Fourth Amendment rights by using a defective warrant to conduct a search, the customary remedy is to suppress the evidence gained from the search. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). An exception exists, however, and courts may admit evidence gathered via an unconstitutional warrant if a reasonable officer would not have recognized the constitutional defect. *United States v. Leon*, 468 U.S. 897, 919-21 (1984). To establish an officer had this "good-faith reliance" on an affidavit, there must be a "minimally sufficient nexus" of the site searched and the evidence sought. *Carpenter*, 360 F.3d at 596. Although it is not entirely unreasonable for an officer to infer evidence of drug trafficking will be found at a suspected drug dealer's home, the officer must still show a nexus that is not "so vague as to be conclusory or meaningless." *Carpenter*, 360 F.3d at 596 (citation omitted); *see, e.g.*, *Gunter*, 551 F.3d at 481-82. "A defendant may defeat an officer's claim of good faith if the affidavit was so lacking in factual support that the officer's belief in probable cause was entirely unreasonable . . . ." *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018) (citing *Leon*, 468 U.S. at 923).

In *Ardd*, the Sixth Circuit concluded that the "good-faith reliance" exception applied where "[p]lenty of evidence supported the officers' good-faith belief that probable cause existed." *Id*. This evidence included the officer's experience that drug dealers often keep evidence of drug activity in their homes and interactions with the defendant confirming the informants' tips that the defendant had, or had attempted, to deal drugs. *Id*. at 352. Additionally, officers confirmed that the defendant was seeking drugs in quantities larger than those indicative of personal consumption. *Id*. Police had also surveilled the defendant's residence prior to executing a "controlled buy." *Id*. In the present case, by contrast, there are no referenced interactions with the defendant to confirm

the informants' tips, nor any evidence suggesting Moore was attempting to obtain drugs, nor any surveillance conducted on him.

Other cases applying the good-faith reliance exception likewise fail to support the United States' position. In *United States v. McCoy*, 905 F.3d 409 (6th Cir. 2018), good-faith reliance was found to search the defendant's home though evidence only linked his drug trafficking activity to his place of business. *Id.* at 419. In the affidavit at issue here, there is no evidence whatsoever concerning any location where alleged drug activity took place.

In *Higgins*, the Sixth Circuit found good faith reliance on an affidavit to search the defendant's home where the only evidence was an untested informant's tip that he had just purchased drugs from the defendant at the residence. *Higgins*, 557 F.3d at 391. Here, the temporal connection is far more remote because the informants allegedly purchased methamphetamine from Moore one week and three weeks earlier, but neither related making the purchase in Moore's residence or on its premises. Therefore, *Higgins* does not aid the United States' argument.

The United States also cites *Frazier* and *Carpenter* to argue the good-faith exception applies. In *Frazier*, good-faith reliance was found in an affidavit to search the defendant's new home although evidence only linked drug trafficking to his prior residence. *Frazier*, 423 F.3d at 537. Officer Johnson's affidavit provided no evidence linking drug trafficking to *any* residence. In *Carpenter*, good-faith reliance was found on an affidavit to search the home where the defendant's residence was located in close proximity to a field where marijuana was being grown. *Carpenter*, 360 F.3d at 596. Again, in this case, there was no information connecting alleged drug activity to Moore's residence.

The present case lacks any factors justifying Officer Johnson's good-faith reliance on the search warrant premised on his affidavit which failed to articulate probable cause. While the nexus

needed to establish the good-faith reliance exception is "less than what's needed to show probable cause," to establish a minimally sufficient nexus there has to be something linking the suspected drug trafficking to the residence which is not "'so vague as to be conclusory or meaningless . . . .'" *Ardd*, 911 F.3d at 351 (quoting *Carpenter*, 360 F.3d at 596). In Moore's case, there is no minimally sufficient nexus because there was absolutely no connection shown in the affidavit between suspected drug activity and Moore's Hillview Boulevard residence. No reasonable officer could be said to have acted in good faith reliance where, as here, "the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown*, 828 F.3d at 385 (internal quotation marks omitted) (citation omitted). Accordingly, the good faith exception does not apply and the evidence obtained from the unconstitutional search warrant will be suppressed.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motions to Suppress (DN 24, 25) are **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

May 8, 2019

cc: counsel of record